IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XCHANGE TELECOM LLC,<br><br>Plaintiff<br><br>v.<br><br>VELOCITY WIRELESS LLC,<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Xchange Telecom LLC ("Xchange" or "Plaintiff"), by and through its attorneys, brings this action against defendant Velocity Wireless LLC ("Velocity" or "Defendant"), and alleges as follows:

## NATURE OF ACTION

1. Plaintiff Xchange provides broadband and telephony services to residences and businesses in Brooklyn, New York using the 3.65 GHz band of the radiofrequency spectrum under Federal Communications Commission ("FCC") Call Sign WQOW965 and a nationwide authorization granted pursuant to the FCC's rules.

2. Xchange brings this action for declaratory and injunctive relief against Defendant Velocity because Velocity has willfully and knowingly caused harmful interference to Xchange's service in the 3.65 GHz band at multiple locations in Brooklyn, New York and has refused to coordinate its operations with Xchange.

3. Velocity's harmful interference and refusal to coordinate with Xchange violate Velocity's duties under the Communications Act, 47 U.S.C. § 333 and 47 C.F.R. § 90.1319, the rules of the FCC — the expert agency to which Congress has delegated the responsibility to manage the use of radiofrequency spectrum in the public interest.

4. Section 333 of the Communications Act provides that "[n]o person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this chapter or operated by the United States Government."

5. Section 90.1319 of the FCC's rules states that applicants and licensees operating in the 3650-3700 MHz ("3.65 GHz") band must "cooperate in the selection and use of frequencies in the [3.65 GHz] band in order to minimize the potential for interference and make the most effective use of the authorized facilities."

6. Velocity's harmful interference and refusal to coordinate its use of the 3.65 GHz spectrum in Brooklyn also intentionally interferes with Xchange's contractual relations with its residential and business customers, and tortiously interferes with Xchange's business relations in violation of New York law.

## PARTIES

7. Xchange is a Delaware limited liability company, duly authorized to do business in the state of New York, with its principal place of business in Brooklyn, New York.

8. Upon information and belief, Velocity is a New York limited liability company operating uncoordinated wireless transmitters at 132 Ditmas Avenue, Brooklyn, New York 11218.

## JURISDICTION AND VENUE

9. This is an action for declaratory and injunctive relief arising under Section 333 of the Communications Act of 1934, as amended ("Communications Act"), 47 U.S.C. § 333, as well as the FCC's spectrum frequency coordination rules set forth in 47 C.F.R. § 90.1319. The claim for a violation of the FCC's coordination rules articulated in a 2005 FCC Order is pursuant to 47 U.S.C. § 401(b). The United States District Court for the Eastern District of New York accordingly has jurisdiction over these federal questions pursuant to 28 U.S.C. § 1331.

10. There are also pendant state damages claims under New York law for the tortious interference with contractual relations and the tortious interference with business relations over which this Court holds supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

12. Xchange provides broadband and telephony services in Brooklyn, New York using frequencies in the 3.65 GHz band under FCC Call Sign WQOW965 and a nationwide authorization granted pursuant to Part 90 of the FCC's Rules. In Brooklyn, approximately 20 percent of Xchange's 3.65 GHz customers are business customers and 80 percent are residential customers. Xchange has individual contractual relations with each of those customers. Xchange provides a throughput of 15 Mbps (download)/2 Mbps (upload) on its 3.65 GHz service through a point to multi-point wireless distribution mechanism. Xchange also provides interconnected VoIP service which some customers

rely on as their primary voice telephone line, including for access to 911 emergency services or participation in the Federal Lifeline Program.

13. Beginning in August 2017, Xchange's business and residential customers began experiencing harmful interference to communications provided from several 3.65 GHz locations properly registered by Xchange. Subsequent investigations by Xchange engineers and an independent third-party engineering consultant both revealed that multiple uncoordinated Velocity transmitters were the source of interference. In one instance, Xchange engineers found harmful interference emanating from an uncoordinated Velocity transmitter at 882 3rd Avenue, Brooklyn, New York 11232 which at the time was mounted on a bracket owned and maintained by Xchange. Xchange had already deployed its own transmitter, and Velocity was using Xchange's cabling without prior request or consent. While that particular offending equipment was subsequently removed, Velocity's harmful interference has continued from another location — 132 Ditmas Avenue, Brooklyn, New York 11218.

14. Velocity's harmful interference is pervasive and impacts the entirety of Xchange's 3.65 GHz customers (approximately 770 lines/500 customers) spanning both business and residential, voice and broadband services. Due to Velocity operating on the same frequencies as Xchange, Xchange's customers have experienced harmful interference to their broadband and voice services in the form of, among other things, inability to place a call, dropped calls, and packet loss.

15. Velocity's harmful interference is unacceptable and in some instances dangerous — Xchange's business customers include medical facilities, nursing homes, doctors, and emergency service providers.

16. Velocity has interfered with all forms of Xchange 3.65 GHz service irrespective of Xchange's broadband throughput obligations to the individual customer. This means that broadband customers often experience significant delays in accessing the internet and sometimes cannot access it at all.

17. As a result of Velocity's harmful interference, Xchange's voice customers utilizing Xchange's interconnected VoIP service have experienced dropped calls, significant static on the line, and loss of one-way audio, caller identification, call waiting, and other call features due to packet loss resulting from Velocity's interference.

18. As a result of Velocity's harmful interference, Xchange has lost approximately 370 customers representing approximately $30,000 in monthly recurring charges since August 2017.

19. Xchange has attempted to work around Velocity's harmful interference in order to deliver service to its customers that have lost services because of Velocity's harmful interference. As a result, Xchange has expended significant time and capital in order to investigate the causes of interference. Xchange has also needed to deploy more expensive equipment operating in different frequencies with different propagation characteristics, complicating the delivery of Xchange's service, in order to continue serve its customers.

20. Xchange's business reputation has been harmed as a result of Velocity's harmful interference, as Xchange has lost customers and been unable to attract new customers due to a lack of a reliable transmission signal using the 3.65 GHz band.

21. On August 28, 2017, as part of a good faith effort to coordinate its operations with Velocity, as required under Section 90.1319(d) of the FCC's rules,

Xchange placed several phone calls to Velocity and spoke with Mr. Kpadeh Sepoe, informing him of the interference Velocity was causing. Mr. Sepoe confirmed Velocity was transmitting from 132 Ditmas Avenue, Brooklyn, NY in the 3.65 GHz spectrum using Baicells RF equipment. Xchange requested Velocity temporarily turn off transmissions so that the companies could work together to find an acceptable solution. After several further unsuccessful attempts to reach Mr. Sepoe, Mr. Sepoe informed Xchange that he was not willing to turn down transmissions.

22. Velocity has knowledge of the existence of Xchange's contracts and business relations as Xchange provided specific notice in telephone conversations and email correspondence with Mr. Sepoe.

23. On December 1, 2017, an independent engineering firm conducted a spectrum analysis site survey requested by Xchange, in part, to confirm the source of the harmful interference being experienced by Xchange's customers. As a result of that analysis, the independent engineering firm identified interfering signals in the direction of transmitters known to be operated by Velocity at 132 Ditmas Avenue, Brooklyn, New York.

24. Despite Xchange's attempts to coordinate the operations of its services with those of Velocity's, Velocity has refused or ignored Xchange's requests and continues unabated as the date of this Complaint to cause harmful interference to Xchange's wireless network and its customers' use their voice and broadband services.

## COUNT I:
## Velocity's Harmful Interference To Xchange And Its Customers

25. Xchange incorporates by reference as though fully set forth herein the allegations of paragraphs 1-24 of this Complaint.

26. Velocity's uncoordinated transmissions since August 2017 have caused and continue to cause harm to communications for Xchange and its customers.

27. Xchange informed Velocity of the interference and sought to coordinate in good faith, but Velocity continued without modifying its transmissions, thereby knowingly causing harmful interference to Xchange and its customers.

28. Velocity's conduct amounts to willful interference in violation of Section 333 of the Communications Act.

## COUNT II:
## Velocity's Refusal to Coordinate

29. Xchange incorporates by reference as though fully set forth herein the allegations of paragraphs 1-24 of this Complaint.

30. Velocity's explicit refusal to temporarily turn down transmissions in order to engage in coordination as required under the FCC's rules and its generally uncooperative posture have prevented effective coordination of operations in the 3.65 GHz band, resulting in harm to Xchange and its customers.

31. Velocity's conduct amounts to a breach of its coordination obligations pursuant to § 90.1319 of the FCC's rules.

## COUNT III:
## Tortious Interference with Contract

32. Xchange incorporates by reference as though fully set forth herein the allegations of paragraphs 1-24 of this Complaint.

33. Xchange has valid contracts with each of its customers that have experienced harmful interference from Velocity.

34. Xchange provided notice of those contracts to Velocity throughout the course of Xchange's attempt to coordinate use of the frequencies.

35. Velocity's continual and willful harmful interference to Xchange and its customers happened under circumstances wherein Velocity continued causing harmful interference to Xchange despite knowledge of the fact that Xchange was a service provider in privity with customers and that continued interference would result in degradation of service.

36. Xchange has lost customers, suffered damage to its business reputation and good will and has expended numerous man-hours and capital investment in attempts to provided services as a result of Velocity's harmful interference.

37. Velocity's conduct amounts to tortious interference with contractual relations under New York law.

### COUNT IV:
### Tortious Interference with Business Relations

38. Xchange incorporates by reference as though fully set forth herein the allegations of paragraphs 1-24 of this Complaint.

39. Xchange has business relations with its current and prospective customers in Brooklyn.

40. The harmful interference from Velocity's uncoordinated use of the 3.65 GHz spectrum interferes with those business relations.

41. Velocity has improperly refused to comply with its obligations under the Communications Act and the FCC's rules requiring coordination with Xchange.

42. Velocity's persistent harmful interference and unjust refusal to honor its frequency coordination obligations under applicable law have interfered with Xchange's business relations with its current and prospective customers and has injured such

relationships, in some instances directly resulting in loss of subscribers and a material diminution of Xchange's business reputation and goodwill.

43. Velocity's conduct amounts to tortious interference with business relations under New York law.

## PRAYER FOR RELIEF

WHEREFORE, Xchange prays that this Court grants relief for all misconduct as follows:

(a) Declaratory relief providing that Defendant has violated the Communications Act, 47 U.S.C. § 333 and the FCC's rules promulgated thereunder, 47 C.F.R. § 90.1319;

(b) injunctive relief indefinitely enjoining Defendant from causing harmful interference to Xchange's service offerings in the 3.65 GHz band;

(c) injunctive relief enjoining Defendant from transmitting in the 3.65 GHz band until such time as effective coordination with Xchange is complete;

(d) compensatory damages;

(e) all costs and attorney's fees incurred by Xchange; and

(f) such further relief as this Court deems appropriate and just.

Respectfully submitted this 30th day of November, 2018.

/s/ Dina R. Kaufman

Dina R. Kaufman
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Fax: (212) 309-6001
dina.kaufman@morganlewis.com

Frank G. Lamancusa
Joshua M. Bobeck*
Ross G. Slutsky
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
frank.lamancusa@morganlewis.com
joshua.bobeck@morganlewis.com
ross.slutsky@morganlewis.com

*Counsel for Plaintiff Xchange Telecom LLC*

* Petition for Admission to this Court filed November 15, 2018.